# 9029

## BRIDGEMAN v. SO. BELL TELEPHONE & TEL. CO.

### (84 S. E. 711.)

APPEAL AND ERROR. CHARGE. ISSUES. MASTER AND SERVANT. WIL-
FULNESS.

1. APPEAL AND ERROR—REQUESTS TO CHARGE.—The failure of the Court
   to charge a proposition of law cannot be assigned as error, unless the
   Court was requested, in some fashion, to charge upon the suggested
   phases of the case.
2. CHARGE—APPEAL AND ERROR—ISSUES.—Where the complaint alleged
   that plaintiff, while in the employ of the defendant, and working
   under the direction of its local superintendent, was injured, and the
   Court charged the law as to the defense of fellow servant, under the
   assumption that such defense was plead, the plaintiff having testified
   that his duties were to follow instructions of the plant foreman,
   the entire answer not being before the Supreme Court, it may be
   assumed that such defense had been plead, and the charge upon the
   law of fellow servant was warranted by the plea and testimony.
3. TRIAL—INSTRUCTIONS—INVADING PROVINCE OF JURY—CHARGE ON
   FACTS.—Where, in an action for injuries to· an employee by the fall
   of a telephone pole on which he was working, the complaint alleged
   that it was the duty of the employer to inspect the pole, and the
   answer alleged that by written terms of the employment it was the
   employee's duty to inspect the pole, a charge whether it was due care
   to stipulate that an employee should do all the inspection, and not
   recover for injuries because assuming the duty of inspection, was not
   a charge on the facts.
4. MASTER AND SERVANT—WILFULNESS.—Where the testimony does not
   suggest that the master had knowledge or notice of the decayed con-
   dition of a post, and fails to indicate that the master was guilty of
   any conscious wrong, the Court properly withdrew from the jury
   the issue as whether the injury was caused by the master's wilful-
   ness, wantonness or recklessness.

Before MEMMINGER, J., Dillon, March, 1914.    Affirmed.

Action by A. L. Bridgeman against Southern Bell Tele-
phone and Telegraph Company. From a judgment for
defendant, plaintiff appeals. The facts are stated in the
opinion.

FOOTNOTE.—As to the nondelegability of duty of master to inspect poles
to be used by its linemen, see note in 30 L. R. A. (N. S.) 47, 50.

Judge Memminger's charge was as follows:

Now, Mr. Foreman and gentlemen of the jury, you gentlemen have heard all of the testimony in this case and the argument of the lawyers, and it remains for the Court to state to you what are the principles of law by which you are to be governed in the determination of this controversy. Now, you will want to understand and get clearly before you what the questions at issue are between these parties to this suit. Now, you get at that from the statement of the claim made by the plaintiff, Mr. Bridgeman, in the paper which is called his complaint, which has been read to you, and the statement of the claim made on behalf of the defendant, the telephone company, in the paper which is called the answer, which has been read to you.

Well, now, in the complaint the plaintiff claims that he was injured by reason of negligence on the part of the defendant telephone company, in certain particulars, the sum and substance of which is that he went up a pole of theirs and fell therefrom by reason of the breaking of the pole; that breaking of the pole was caused by the failure of the telephone company to have it sufficiently inspected and also by the failure of the defendant company to have the pole sufficiently guyed up with guy wires or other things to hold it in position; and, furthermore, that he was not furnished with sufficient tools and appliances to make such an inspection of the pole as would have advised him of its unsafe condition, and, therefore, to enable him not to undertake to climb the pole, knowing that it was defective, and that, therefore, he would not have come to his injury. Now, he claims that all or any of those acts were negligent acts on the part of the telephone company.

Now, the telephone company comes in and denies being negligent on its part and then it sets up certain affirmative defenses. It says, first, that it was not negligent in any of the particulars claimed by Mr. Bridgeman and charged against it by him, and it says even if it be so, that it was

negligent, that, nevertheless, that plaintiff assumed the risk which were ordinarily incident to his employment as a line-man, and that his injury was caused by the assumption of risks ordinarily incident to his employment as a lineman, and having assumed the risks he cannot recover damages against the company for it; that one of those risks, they say, was that he undertook and agreed himself to make an inspection of the poles and that he failed to make a sufficient or reasonably careful inspection of it, and failing in that particular he assumed the risk of climbing the pole without sufficiently inspecting it himself, and the pole having fallen that risk is one he undertook to assume, and, therefore, he cannot recover damages from the company. Then there is another defense that if he was injured he was not injured through the negligence of the company, but by the reason of the negligence of a fellow-servant of his, that is, one working with him at the same sort of work, and engaged in the actual performance of a certain piece of work with him at that time, and that his injury was caused by the negligence of that man in performing his part of that particular piece of work. That is what the company claims on that defense, and if that be so, under the law, then that is one of the risks which he also assumed, to wit, the negligence of a fellow-servant, under the law he could not recover damages. Then they have another defense, that is along the line that even if the jury decides that the company was negligent in any or all of the particulars which he charges against it, nevertheless that he himself was also negligent, and that by his negligence he contributed to bring about his injury and that his negligence was the proximate cause of his injury, contributing to bring it about. That is, even if the company was negligent that he also himself was negligent and that his negligence com-bined and concurred with the negligence of the company as a proximate cause of his injury which would deprive him of his right to recover under the law. Now, they

claim that he was guilty of contributory negligence in these certain particulars, that although he had undertaken expressly to inspect the pole before he undertook to climb the pole that he did not carefully inspect the pole, that had he carefully inspected it he would have discovered the defect, and he would not have gone up the pole and come to his injuries, and, furthermore, there are other grounds upon which they allege that he was guilty of contributory negligence, and one is that being upon the pole he went to work and cut loose the support from the pole, to wit, one of the wires attached to the pole which plainly and obviously was acting as a support and helping hold up the pole, and by cutting loose that wire, or wires, and releasing the strain from the pole on that side and increasing the strain on the other side, whereby the pole was brought to the ground and he with the pole, and that was an act of negligence on his part in that it was apparently and plainly a dangerous thing for him to do and that there was a safe method of cutting the wires which he claims he was called upon to cut which was obviously and apparently the safe way and which, if he had adopted it, as he should have, the company claimed that he would not have been injured; that is, instead of cutting loose the wire and taking precaution to sustain the pole as against the strain from the wires on the other side he just cut it loose and took the risk and was guilty of negligence in doing that which contributed to bringing about his injury as a proximate cause thereof, and if that is so, under the law he is not entitled to recover damages.

So that you see under these pleadings are raised those issues, and the points of law upon which you have to have information is as to what is negligence, what is contributory negligence, what is in the law known as the assumption of risk and the law as to fellow-servants.

Now, gentlemen, negligence is defined in the law to be the failure to exercise due care. It is doing something

which a reasonably prudent person would not have done, or should not have done, or failing to do something which a reasonably prudent person would have done, or should have done, it being for the jury in each particular case to say whether or not the party charged with negligence failed to exercise due care required under the facts and circumstances of each particular case. Now, in this case, you see, it is claimed that this company did not furnish this man with sufficient tools with which to make an inspection of that pole. Now, then, you will have to take up and decide, first, the question of fact is that so, has that been proved by the greater weight of evidence. If so, was that a negligent act on their part? A failure to exercise due care under the facts and circumstances of this case? Then he charges that there was not sufficient inspection of this pole by this company. Now, then, you have to say from the evidence what, in the exercise of due care, which is what the law requires of that company, they would have to do in respect to having inspection made of this pole before its linemen climbed up them. If you decide from the evidence that the telephone company had stipulated with this lineman, and advised and informed him that it was his duty before climbing one of its poles to himself make an inspection of the pole, and that he had understood and undertaken that that was to be a part of his duty, and then, nevertheless, he failed to make a reasonable inspection of that pole and got injured, would you gentlemen say that the telephone company had exercised due care in going to that extent, or should it have done more? Now, if it was so, if the evidence shows you that it had some other and different method of inspecting the pole, some other method on which he had a right to rely, it would be for you to say whether or not it was negligence in them in not having exercised that other method of inspecting the poles also. Now, in the case of Jones, which you have heard read to

you, it appeared in the evidence that Jones had undertaken
by contract and by understanding of the rules of the com-
pany that he would inspect the poles himself before climb-
ing up one, and there was evidence further in that case that
there was another method of inspecting also in use by the
company and of which he had knowledge; that a special
gang of inspectors went around and made special inspec-
tion of the poles and the evidence of the foreman of that
gang was that had his gang gone to that pole and made
that inspection they would have discovered the defect which
resulted in the injury of Jones, the Court held when the
case came before them that even although Jones—that the
jury might decide that Jones had failed in making a suffi-
ciently reasonable and careful inspection of the pole him-
self, so that being all the case you would have to hold that
if he had then gone up the pole and got injured that he
could not recover, because he would be held bound by his
assumption of risk of climbing the pole after he had made
inspection, which was required; but if the jury went on
and decided that the company had another method of inspec-
tion which they failed to carry out, and which Jones knew
that they had and which he had a right to rely upon, then
the jury could say that the company was negligent, that it
failed to exercise due care with regard to Jones, notwith-
standing the fact that he had undertaken to assume that
he would not get any damages if he was injured, he having
agreed to inspect the pole and assumed the risk of climbing
based on that inspection.   After all the question in each of
these cases is still that you have to say whether or not in
the exercise of due care the company had carried out what
you consider the care which is necessary under the facts
and particular circumstances of each particular case.

Now, the claim here, and you are confined to the specifi-
cations of negligence, which the plaintiff charges against
the company, that is, was it due care on their part not to

14—100

have a guy wire on the pole? Was it due care on their part to stipulate with an employee that he should do all of the inspection and not be able to recover damages if he got injured by reason of the fact that he had assumed the duty of doing all of the inspection of the pole, or this other ground of negligence set out in the complaint that sufficient tools had not been provided?

Now, the plaintiff must make out by the greater weight of the evidence to you before he has a basis for recovery that it was the duty of the company in the exercise of due care which they owed him to do one or more or all of those things. Then if you are satisfied that it was their duty, did they fail in that duty—did they fail to carry it out? If he proves that by the greater weight of the evidence, then he would have laid the foundation for his recovery, he would have shown negligence on the part of the company, and would be entitled to recover damages if that negligence brought about his injury as the proximate cause of his injury, unless his right to recover is defeated by some one or any or all of the defenses set out in the answer. Now take up the defense of the matter of fellow-servants.

It is the law that a man cannot recover damages when he is injured by the negligence of his fellow-servant, and the question of whether one is a fellow-servant of another is a question for the jury in each particular case under the rule of law that where two men are engaged in certain work, even though one may have the right and authority to give orders to the other and superintend and instruct him, he is a fellow-servant. Just like a gang of laborers working on a railroad with a foreman; if the foreman is with them performing the actual work as they are doing, such as laying rails, digging grass, etc., and if he is assisting them in the actual work, why then he is a fellow-servant with them, even although he has the right to direct their movements and is their superintendent, or boss, as might be called, and if one of those men was injured

by negligence on his part while he was engaged with them in the performance of that work, that man would not be able to recover.  But if a man was injured by reason of negligence on the part of the foreman in a matter under which he was instructed as the evidence showed to give directions, to supervise and superintend the work, and as a result of his giving the order negligently, and a man acting under that order, not performing the work with him, but under his instructions and directions, why that man would not be his fellow-servant and he would not be deprived under the law of the right to recovery by reason of the law as to fellow-servants, as I have stated it to you. I can make that plainer to you by a case before me here that went to the Supreme Court, and it decided that "a lineman employed by a superintendent and put under a foreman who employs and discharges servants cannot recover of the master for an injury caused by the negligence of the foreman while discharging the duties of a fellow-servant as foreman."  The Supreme Court lays down the law in a clear manner, and I will read it to you so that you may understand it: "The act must be that of a superintendent exercising superintendence.   In other words, when the negligence of a superintendent is relied upon," as in this case, this man Bridgeman, under this special phase of the case, claims that it was an act of negligence on the part of the man in Dillon whom he claims was his superintendent, having the right and authority to direct his employment and to direct him to cut that wire, and that was negligence on his part, that he was not a fellow-servant, but a representative of the company in giving that order, not actually participating in the actual work Bridgeman was doing, and that, therefore, the company would be responsible for his negligence in giving him that order.   "In other words, when the negligence of the superintendent is relied upon the negligence relied upon must occur, not only during the superintendence, but substantially in the exercise of it."   Now,

if you decide that it was negligence for this man here in Dillon to give this order, was he or not in doing that engaged in an act of superintendence, that is, representing the company, and giving orders to this man to do a specific piece of work? If so, if you decide that was a negligent act, on his part, the company would be responsible, but if in giving that order he was engaged and participating in this particular piece of work, with the other man, at the other end, they would be fellow-servants, and the company would not be responsible. "On the other hand, the act is not one of superintendence where at the time and in doing the act complained of he is engaged in mere manual labor which is the duty of a common workman. But it is held that he is engaged in an act of superintendence although he is at the time of the injury performing an act of manual labor where it is done pursuant to directing the work, and in furtherance thereof." That is the law under the defense of fellow-servants, and understand that upon the affirmative defenses—fellow-servants, assumption of risks and contributory negligence, that I am going to explain to you, the burden of the proof is upon the defendant who sets them up to prove those defenses, any one or all of them, by the greater weight of the evidence in making them out.

Coming to the matter of assumption of risk, the law is this: That if a man is injured by a risk which he has assumed he cannot recover damages for that injury and the question is, what risks does a man assume in taking employment? Well, he assumes all such risks as are ordinarily incident to that employment. Of course, you know some employments are very safe, others have unusual incidents of danger. When a man undertakes any employment he assumes the risks which are ordinarily incident to that employment and if he is injured as a result of one of those risks he cannot recover damages. Furthermore, a man may also assume, as it is claimed in this case, some special and particular risks. It is claimed that this man

assumed the risk of going up these poles after making his
own inspection; that is, that he undertook to make an inspec-
tion of a pole and to be satisfied with that inspection and
that if he got injured as a result of a failure in his making
that inspection, or as the result of something he could not
discover by that inspection, that he assumed that he would
not undertake or be able in law to recover as the result of
any such risk as that.    If that be so, if you decide from the
evidence, by the greater weight of it, that this injury resulted
to the plaintiff as the result of the risk ordinarily incident
to his employment as a lineman or such risks as he had
assumed by special contract, why then, he could not recover
under the law.

Now, then, the other defense which is set up is the defense
of contributory negligence which I just stated to you in
outline.    That is, even if you decide that the company was
negligent, yet if he himself was also negligent and his neg-
ligence contributed to his injury as a proximate cause of it,
and that is made out by the greater weight of the evidence
by the company, he cannot recover in the law.    Now I will
give you the technical definition of contributory negligence.
It is a want of ordinary care on the part of a person injured
by the actionable negligence of another combining and con-
curring with that negligence and contributing to the injury
as a proximate cause thereof without which the injury
would not have occurred.    Now, you see the defendant
here—of course, there is no admission of negligence on the
part of the company at all—but it is claimed in a separate
defense that even if the jury decide that it was negligent,
yet nevertheless they have shown to you by the greater
weight of the evidence that this man was also negligent in
cutting that wire without taking proper precaution of pro-
tecting himself by reason of the pole falling.    Now, the
idea of contributory negligence is like this—like one of the
cases referred to yesterday—and which I myself tried in
the low country.    It was the case of a fireman of an engine.

As they were coming up to a station the engineer wanted
something from a near-by store and he ordered the fireman
to get out and get it for him.   The engine was moving at a
rapid pace and the fireman hesitated to obey the order,
because it was apparently a dangerous thing to do.   The
engineer, however, was the man in authority over him—
not a fellow-servant—a man who, under ordinary circum-
stances, he had to obey, and he, after demurring a little,
attempted to get off of the moving engine and in doing so
fell and was seriously injured.   Now, in the trial of that
case it was apparent that there was negligence on the part
of the engineer for which the company was responsible
in ordering this man to get off of a rapidly moving train;
but it was so apparent that to undertake to get off the train
moving at the rapid rate that that train was moving at that
time was an obviously and plainly dangerous thing to do,
that no other inference could be drawn from the testimony
except that the fireman in so getting off was himself guilty
of negligence, and that his negligence, his failure to exercise
due care on his part, contributed to bring about his injury
as a proximate cause of it and that, therefore, he could not
recover damages in the case.   Because our law says, you
see, where both parties are negligent and the negligence of
both combine and concur to bring about an injury which
is the proximate cause of the injury the law does not attempt
to go in there and apportion the degrees of negligence, but
simply says that if a party's own negligence contributes to
an injury as a proximate cause of it he cannot recover.
It says that it would be setting a premium on a man's own
carelessness to have it said in the law that he can be negli-
gent and get injured by the negligence of another and then
come in and claim damages and get it.   So the law does
not recognize that, but leaves the parties where it finds them
and does not award damages.   The rule is different in dif-
ferent jurisdictions, but with that we have nothing to do.
So that in this case if the greater weight of the evidence

satisfies you that there was negligence on the part of the company in any or all of the particulars named, but that nevertheless the greater weight of the evidence satisfies you that this plaintiff also was himself negligent, that is, failed to exercise due care himself, under all the facts and circumstances of the case, then you have to leave him where you find him and not award any damages.

Now, gentlemen, there are one or two other points involved in the case which I will have to call to your attention, but those are the principal ones. Now, if you decide, of course, that the plaintiff has failed to make out any of the acts of negligence alleged by the greater weight of the evidence, that ends the case and your verdict is for the defendant. If you find that the plaintiff has made out his case, but that the defendant has made out any one of the defenses, or all of the defenses, why, that would end the case and your verdict would be in favor of the defendant. But if you find for the plaintiff in the case—decide in his favor and none of the defenses have been made out, then the question would be as to the amount of the damages you would give the plaintiff. In this case you heard the Court state that it did not consider that there was the element of wilfulness as would warrant the jury in going to the extent of finding punitive damages. So that your inquiry is upon the question of compensatory damages—if you decide for damages—and in arriving at that you have to take into consideration such elements as pain and suffering, such as physical impairment, his loss of earning capacity, loss of any such earnings as he has incurred in the past from the injury, and if the injury is permanent such loss as he necessarily will incur in the future as a result of the injury. Future damages being such only as it is reasonably certain will of necessity result in the future from the injury. It is a question of fact for the jury to say what was the injury and what damages will compensate the plaintiff for the injury received, being limited, of course, in this case to the

amount claimed in the complaint—nineteen hundred and ninety-five dollars. That, of course, is for you. If you decide for the plaintiff you will say "We find for the plaintiff so many dollars," writing out the amount in words, and not in figures, and if you decide for the defendant, why, you will just write "We find for the defendant."

Now, on behalf of the plaintiff here there are some definite requests which they ask me to submit to you, and I am going to do that. "I charge you that if a servant's work is done in the presence of a representative of the master or under his immediate directions and instructions, unless such directions or instructions were so obviously dangerous in their execution that it would be folly for a man to undertake to carry them out, that is equivalent to an assurance by the master that the servant may safely proceed to do the work required by him, and in such cases the servant is not bound to search for danger. He may safely rely for his safety upon the conduct of the representative of the master."

"Now, you will understand all that it is ordinarily the duty of the subordinate—one that is under the direction and control of another—is to carry out such reasonable orders as his superior gives him, and if in doing that he incurs injury he cannot be held guilty of contributory negligence. But where the order is plainly and obviously dangerous to carry out—such as a man of ordinary prudence would not undertake, yet nevertheless he went ahead and carried it out, why then he could not come in and rely on the direction of one in authority over him and claim that he was not guilty of contributory negligence. Then, as I stated to you in the Stephens case, the fireman obeyed the order of the engineer, yet he obeyed an order that was apparently dangerous, but had it been an order such as ordinarily would not have so appeared to a man exercising due and ordinary care it would have been his duty to carry it out and he would have been protected against the defense of contribu-

tory negligence by obeying the order of the superintendent, or the person ordering him, or the representative of the master. Those are all the points involved in this case. You will have to decide it one way or the other."

The substance of the exceptions is stated in the opinion.

*Messrs. Sellers & Moore,* for appellant, submit: *As to duty of master to furnish tools and appliances that are reasonably safe to work with and a safe place to work in, nondelegable, and failure to perform such duties is negligence, and it should not be left to jury to determine whether or not such failure is negligence:* 26 Cyc. 1097b; 69 S. C. 101; 68 S. C. 55; 66 S. C. 520; 58 S. C. 360; 15 S. C. 443; 52 S. C. 445; 60 S. C. 18. *Not negligence to disobey rules of company under instructions of master:* 68 S. C. 55. *Contributory negligence no defense to wilful or wanton injury:* 26 Cyc. 1026f: 82 S. C. 321; 85 S. C. 463.

*Messrs. Ragsdale & Whiting* and *Gibson & Muller,* for respondent, cite: *As to inspection of poles:* 70 Am. St. Rep. 245; 128 Fed. 272; 11 L. R. A. 410; 52 L. R. A. 437; 82 S. C. 360. *Fellow-servants:* 87 S. C. 449.

March 13, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action for actual and punitive damages by a servant against the master; verdict for the defendant; appeal by the plaintiff.

History: The plaintiff, a young man 22 years old, was a lineman in the service of the defendant; he was instructed by the defendant's superintendent of the local office at Dillon to do some work on a telephone line at Gallavon, in the country, out eight miles from the town of Dillon; he climbed a pole and cut a wire, the pole broke off just above the

ground and fell with the plaintiff on it and hurt the plaintiff's shoulder.

There were no requests to charge.

The Court withdrew from the jury any consideration of punitive damages, and submitted to the jury the issue of actual damages.

There are nine exceptions and they fall into these classes, to wit: (1) The 1st, 2d and 9th refer to the issue of wilfulness; (2) the 3d and 5th and 7th refer to a failure of the Court to charge; (3) the 4th states a proposition of law, but does not claim that the Court refused upon request to charge it, or that the Court charged a contrary proposition of law; (4) the 6th claims that the Court charged a proposition irrelevant to the testimony; (5) the 8th claims that the Court charged on facts.

The first class will be considered last.

Those embraced in the second class all complain that the Court failed to charge; but that is no ground for complaint, unless the Court had been requested, in some fashion, to cover the now suggested phases of the case.

The legal proposition stated in the third class may be true; but the Court did not directly or by inference dispute it; and the Court was not requested to state it as the law.

The fourth class has reference to that part of the charge which dealt with the law of fellow-servant.

The entire answer is not printed, but those parts which are printed make no reference *eo nomine* to fellow-servant.

There must have been some such defense plead, for the Court said to the jury: "Now take up the defense of the matter of fellow-servant," and proceeded to correctly declare the law upon that subject. The complaint itself suggested the subject by alleging that "plaintiff was working

under the orders of the defendant's local plant superintendent."

It is true the testimony does not tend to show that the plaintiff was a fellow-servant with Gilbert (the other sole employee with the plaintiff, and referred to in the testimony as superintendent); but the plaintiff himself had testified: "My duties were to follow the instructions of the plant foreman and do what he told me to do." The Court was, therefore, warranted by plea and by testimony to charge the jury the law of fellow-servant.

The fifth class refers to the constitutional prohibition to charge on the facts. The specific charge on the facts assailed in the instant case is, that the Court stated to the jury an issue that was not plead in the complaint, to wit: "Was it due care on their part to stipulate with an employee that he should do all of the inspection and not be able to recover damages if he got injured by reason of the fact that he had assumed the duty of doing all of the inspection of the pole?"

But the 4th paragraph of the complaint alleged that the duty to inspect the pole was on the master; and the 3d paragraph of the answer denied that, and alleged that by the written terms of the employment the plaintiff's duty was to inspect the poles.

The Court did not indicate whose duty it was to inspect the poles; it only stated the contentions of the litigants thereabout. There was no approach to a charge on the facts.

The first class has already been reserved for the last consideration.

There were only two witnesses for the plaintiff, the plaintiff himself and the stable boy who drove him to the *locus*.

The testimony is that to all ocular appearances the post was sound; there was no testimony to suggest that the defendant (by its superintendent, Gilbert) had any knowl-

edge of the decayed condition of the post. The plaintiff said nothing to indicate that the master was guilty of any conscious wrong.

There is, therefore, no foundation for any of the exceptions, and they must all be overruled.

The real issue in the case was that suggested by the foreman of the jury: for granting that the master was convicted of negligence, was the plaintiff also guilty of negligence in climbing a pole and cutting one of three wires running in contrary ways from its top, so that the pole fell to the ground?

The foreman asked the Court: "We want to know that if in your charge was it that, if we found both acted carelessly, were we to find nothing for the plaintiff."

That was the issue in the case, and on it the plaintiff lost. Judgment below is affirmed.